67 N.J. Super. 537 (1961)
171 A.2d 114
SAMUEL B. LESSER, AS TRUSTEE, ETC., PLAINTIFF-APPELLANT,
v.
H. ERNEST STRUBBE, ET AL., DEFENDANTS-RESPONDENTS, AND ANDREW W. O'ROURKE, ET AL., DEFENDANTS, AND PAUL R. KLEINBERG, TRUSTEE, ETC., DEFENDANT-RESPONDENT.
SAMUEL B. LESSER, AS TRUSTEE, ETC., PLAINTIFF,
v.
H. ERNEST STRUBBE, JR., ET AL., DEFENDANTS. ELEANOR STRUBBE, PLAINTIFF,
v.
SAMUEL B. LESSER, AS TRUSTEE, ETC., DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1961.
Decided May 19, 1961.
*539 Before Judges PRICE, GAULKIN and SULLIVAN.
Mr. Alfred C. Clapp argued the cause for plaintiff-appellant (Messrs. Clapp & Eisenberg, attorneys).
Mr. Walter D. Van Riper argued the cause for defendant-respondent and plaintiff-respondent (Messrs. Van Riper & Belmont, attorneys).
*540 Mr. Jack L. Cohen argued the cause for defendant-respondent, Paul R. Kleinberg, trustee.
The opinion of the court was delivered by SULLIVAN, J.A.D.
Plaintiff, as trustee, brought two actions to foreclose two mortgages given by the defendants H. Ernest Strubbe, Sr. and Eleanor Strubbe, his wife. One mortgage covered property on Stiles Street, Elizabeth, N.J., which was owned by Eleanor Strubbe; the other covered three properties in Essex County, one of which was situate on Central Avenue, East Orange, and was owned by the Strubbes as tenants by the entirety, and the other two were situate on Fourth Avenue, East Orange and University Court, South Orange, respectively, and were owned by H. Ernest Strubbe, Sr. The mortgages were given as collateral security for a $600,000 note and mortgage dated July 3, 1956, due one year from date and made by West Albany Warehouses, Inc. to plaintiff on certain property in West Albany, New York. The West Albany note and mortgage were executed by Mr. and Mrs. Strubbe as president and secretary respectively of the corporation. All of the mortgages and the note were executed on the same date as were two agreements in which the Strubbes personally guaranteed payment of the West Albany note and mortgage. When the note became due on July 3, 1957, and demand for payment was not met, foreclosure proceedings were commenced in New York on the West Albany mortgage.
H. Ernest Strubbe was adjudicated a bankrupt in 1957 and a trustee appointed for him. The instant proceedings were commenced in 1958 to foreclose the two collateral security mortgages on the Elizabeth, East Orange and South Orange properties and answers were filed herein which, inter alia, charged that the $600,000 loan was usurious and had actually been made to Strubbe, individually, although disguised as a corporate loan to circumvent the usury laws.
A separate suit was also filed in 1958 by Eleanor Strubbe *541 alleging fraud, misrepresentation, lack of consideration and lack of independent advice in her execution of the mortgage on the Elizabeth property and her guaranty of the West Albany debt, and seeking to void both instruments on these grounds.
All three actions were consolidated and tried together.
The trial judge ruled that the laws of New Jersey were applicable to the transaction and that the loan was usurious and was made to Strubbe, individually, but that in order to avoid the defense of usury the corporate cloak was used. The court therefore struck the $70,000 charge made by the mortgagee for the loan and reduced the amount of the debt to $530,000.
The court also found that there was fraud in this case practiced upon Mrs. Strubbe by her husband; that constructive notice of the fraud was brought home to the plaintiff by the circumstances of the case; that the doctrine of unclean hands should be applied against plaintiff and that the mortgage on the Elizabeth property should be declared null and void as should the guaranty agreements as far as Mrs. Strubbe was concerned. The opinion of the trial court is reported in 56 N.J. Super. 274 (Ch. Div. 1959). Plaintiff appeals.
Since the trial and pending appeal H. Ernest Strubbe died and Eleanor Strubbe, individually and as executrix under the will of H. Ernest Strubbe, Sr., and herself, Edward August Strubbe and H. Ernest Strubbe, Jr., individually and as trustees under the will of H. Ernest Strubbe, Sr., have been substituted as defendants in place of H. Ernest Strubbe, Sr.
The evidence presented at the trial discloses a complicated financial transaction, the background and details of which are accurately and comprehensively set forth in the opinion of the trial court, and no useful purpose would be served by restating them here.
On the issue of usury, a review of the record satisfies us that there was ample credible evidence to sustain *542 the ruling by the trial court that the transaction was governed by the laws of New Jersey, and that the loan was usurious and was made to an individual in the guise of a corporate loan in order to circumvent the usury laws. That part of the judgment is affirmed on the findings and conclusions set forth by the trial court in its opinion.
Plaintiff argues that the defense of usury is inapplicable because he issued a commitment to make the loan to the corporation, and only thereafter did he learn that some of the loan proceeds were to be used for personal purposes. That argument is neither factually nor legally correct. The evidence shows that from the inception plaintiff knew that the loan was not actually being made to West Albany but was for the purpose of acquiring ownership of the stock thereof. Even if plaintiff had in good faith issued a loan commitment to the corporation (which was not the fact), there would have been no legal obligation to consummate the loan once he found out that it was in violation of the usury law. Such an agreement being illegal would be unenforceable. 12 Am. Jur. Contracts § 379.
Plaintiff also argues that the fact that West Albany was a pre-existing bona fide operating corporation precludes the defense of usury, even if it be assumed that plaintiff knew prior to the commitment that part of the loan proceeds were to be drawn from West Albany and used for Strubbe's personal benefit. This argument however is invalid because it is based on the premise that West Albany was the actual borrower. The trial court found that this was not the fact and we agree.
It is also asserted by plaintiff that if the defense of usury does apply, it is limited to that part of the loan proceeds shown to have been used for Strubbe's individual purposes. There is no merit to this point. There was only one loan which it has been determined was made to Strubbe. The entire transaction was subject to the usury statute irrespective of the purpose to which the proceeds were put.
*543 The trial court in holding that the mortgage on the Elizabeth property, which was owned by Mrs. Strubbe, should be declared null and void, and that her personal guaranty of the West Albany note and mortgage should likewise be nullified, had this to say.
"The proofs disclose that she is 76 years of age and without business experience. She made a pathetic picture on the witness stand, being extremely nervous and frightened to the point where she had difficulty understanding and answering questions. The apartment house in Elizabeth comprises her entire estate, or, as she put it, `everything she has in the world.' She has worked in her husband's ice cream stores for many years doing all sorts of menial tasks, and through earnings thus obtained she accumulated the money which she used to purchase the apartment house. She was not represented by counsel at the time she signed the documents in this case * * *.
Mrs. Strubbe said that her husband told her that the purpose of her signing the documents was to refinance the mortgages on the Fourth Avenue, East Orange, property * * *.

* * * * * * * *
The evidence adduced as to the unusual circumstances attendant upon the granting of the mortgage, and the proceedings thereafter, impel the conclusion that the mortgagee was put on inquiry and should have ascertained whether or not Mrs. Strubbe actually was aware of the fact that she was mortgaging her only asset and was gratuitously guaranteeing a $600,000. note of a corporation in which the mortgagee had reason to know she had no financial interest. This was not a simple mortgage transaction. It involved the giving of $1,800,000. of security mortgages for a $600,000. note and the guaranteeing of that note by the individual Strubbes in addition to the giving of the mortgages. There were at least four mortgages on New York and New Jersey properties to be satisfied and the title documents obtained, and there was also the transfer of the West Albany stock. Many checks were drawn and exchanged. It is difficult to understand why, under these circumstances, extreme care was not taken to be certain that this aged and infirm woman knew the effect of her acts. While there is no doubt that no active fraud was committed by the plaintiff, nor participated in by him, the circumstances warrant a finding that constructive notice of the fraud was brought home to him by the circumstances.

* * * * * * * *
The plaintiff was put on inquiry prior to the time the mortgage loan was closed and he parted with his clients' funds. I cannot believe that plaintiff was not aware of the fact that Mrs. Strubbe was not a stockholder of West Albany on July 3, 1956, when she signed the papers. He knew when he prepared the guaranty long-form agreement sometime in June that she was not a stockholder *544 or officer because he recited therein that the Strubbes `are desirous of becoming stockholders and officers of the borrower corporation.' I am satisfied that he also knew that she was not a director on that date. He had reason to know, therefore, that her signatures in the capacity of secretary were improper. A simple examination of the minute book or stockbook of West Albany would have shown the true facts, as would an interview with her.

* * * * * * * *
I find that Mrs. Strubbe did not understand the nature of the transaction and was not made aware that the result of it might be to strip her of her entire estate. The facts of this case justify the imposition of the clean hands doctrine against the plaintiff, although not to the extent of denying him the right to foreclose the mortgage on the Essex County properties * * *.
Finding as I do that there was fraud in this case practiced upon Mrs. Srtubbe, and that constructive notice of the fraud was brought home to the plaintiff by the circumstances of the case, and that the doctrine of unclean hands should be applied, the mortgage on the Elizabeth property will be declared null and void and the guaranty agreements are also nullified as to her * * *."
It must be noted at the outset that this was venture borrowing and not the case of a debtor trying to raise funds. We have here a situation where Mr. Strubbe, apparently possessed of considerable wealth, sought to borrow a large sum of money for the purpose of acquiring a new corporate business interest. As finally arranged, the loan was to be made to the corporation which Strubbe was acquiring, and he and his wife were to execute the corporate note and mortgage as corporate officers. In addition, both Mr. and Mrs. Strubbe personally were to guarantee the payment of the corporate note and mortgage and, as collateral security for the loan give mortgages on four pieces of New Jersey property, one of which (the Elizabeth property) was owned by Mrs. Strubbe, one was owned by both of them as tenants by the entirety, and two were owned by Mr. Strubbe.
It was in this factual setting that Mr. Strubbe produced his wife to execute the documents necessary to consummate the loan. Actually she did not attend at plaintiff's office but waited in the nearby office of Wolf Oil Company (of which Strubbe was president). The details of the closing were resolved in plaintiff's office and Mr. Strubbe signed *545 all of the instruments there, whereupon the papers were taken to Mrs. Strubbe by Lionel L. Meyers, the law partner of plaintiff. He had Mrs. Strubbe sign the various instruments and took her acknowledgment thereon. It may be as the Strubbes claim, that, at the closing they were unrepresented by counsel, but at the time plaintiff had reason to believe that a New York attorney who was present was representing the Strubbes.
A lender is not required to insist that a borrower, or his wife, secure independent legal advice before entering into a loan transaction. It certainly was not the lender's obligation to advise Mrs. Strubbe as to whether or not she was acting prudently. Plaintiff had the right to assume that Mr. and Mrs. Strubbe had discussed the venture between themselves and had reached their own understanding or agreement. Even though plaintiff was aware that Mrs. Strubbe was "gratuitously" guaranteeing and securing her husband's loan, through the medium of a corporate transaction, that of itself would not require the lender to inquire whether her husband was committing a fraud on her. Lawshe v. Trenton Banking Co., 87 N.J. Eq. 56 (Ch. 1916), reversed on another ground 88 N.J. Eq. 347 (E. & A. 1917).
The fraud of a husband inducing his wife to execute a mortgage will not invalidate it as against the mortgagee unless the mortgagee in some way participated in or knew of the fraud. Smith v. Commercial Bank, 77 Fla. 163, 81 So. 154, 4 A.L.R. 826 (Sup. Ct. 1919); Hall v. Forman, 94 Fla. 682, 114 So. 560 (Sup. Ct. 1927); 59 C.J.S. Mortgages § 141, p. 187; cf. Homeopathic Mutual Life Ins. Co. v. Marshall, 32 N.J. Eq. 103 (Ch. 1880); Henion v. Monahan, 110 N.J. Eq. 361 (E. & A. 1932).
There is nothing in the case to suggest that plaintiff had any reason to suspect that Mrs. Strubbe was being deceived by her husband and that her execution of the mortgage on the Elizabeth property (and indeed her execution of all the other instruments) was induced by fraud. Strubbe testified that on the way over to the Wolf Oil Company office he *546 told Meyers not to inform Mrs. Strubbe that she was mortgaging her Elizabeth property because, if she knew that, she would not sign. Meyers denied any such conversation, however, and the trial court did not believe Strubbe's story.
The trial court found that constructive notice of the fraud was brought home to the plaintiff by the circumstances of the case as set forth in its opinion, supra. We do not agree that these circumstances were such as to impute to plaintiff constructive knowledge of any fraud. It is true as above noted that in form Mrs. Strubbe was "gratuitously" guaranteeing and securing a corporate obligation in which she had no financial interest. However, in substance, as the trial court found, the loan was to her husband so that he might acquire ownership of a supposedly valuable business property. Thus viewed, there was nothing unusual or untoward in what Mrs. Strubbe did.
The trial court relying on Ellis v. Ellis, 34 N.J. Super. 62 (Ch. 1955), also applied the doctrine of unclean hands against the plaintiff because Mrs. Strubbe was not made aware that the transaction might strip her of her entire estate. In Ellis though, there was a confidential relationship between the parties in which the donee was the dominant figure. The instant case is quite dissimilar and the same principle does not apply.
Counsel for Mrs. Strubbe argues that the explanation given her by Meyers was incomplete, inaccurate, and even misleading. However, a review of Mr. Meyers' testimony shows that while he may not have covered every detail of the transaction, he did explain to Mrs. Strubbe the nature of each of the instruments she was signing and she said that she understood.
It is also argued on behalf of Mrs. Strubbe that the guaranty and mortgage (on the Elizabeth property) are void for lack of consideration and by reason of a deviation from the terms thereof by the mortgagee. Neither of these points is well taken. The loan extended to the husband by plaintiff was consideration for Mrs. Strubbe's guaranteeing *547 and securing the debt. The so-called deviation is that Mrs. Strubbe agreed to guarantee and secure a corporate loan, and the loan actually made, although in form a corporate transaction, actually was to her husband who was acquiring all of the corporate stock. These facts do not constitute a deviation within the meaning of the cases. Lyon & Co. v. Plum, 75 N.J.L. 883 (E. & A. 1908).
The trial court also ruled that its findings as to the invalidity of plaintiff's mortgage on the Elizabeth property did not affect the validity of plaintiff's mortgage on the East Orange and South Orange properties. It is impossible to reconcile these holdings, because whatever fraud was exerted on Mrs. Strubbe by her husband to secure her signature to the mortgage on the Elizabeth property was also exerted on her to execute the other mortgage. If one were void so was the other, but even Mrs. Strubbe does not now claim that the mortgage on the Essex County properties should be declared void.
The conclusion is that Mrs. Strubbe has not sustained the burden of proof that plaintiff knew or should have known about such fraud as was committed on her by her husband or that notice of any fraud was brought home to the plaintiff by the circumstances of the case.
The case is remanded for the entry of a judgment in conformity with this opinion. No costs.